NOT FOR PUBLICATION                                     (Docket No. 14)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                                    :
DAVID JOHNSON,                                      :
                                                    :
                            Plaintiff,              :        Civil No. 06-5018 (RBK)
                    v.                              :
                                                    :        **OPINION**
BATH SAVER, INC.,                                   :
                                                    :
                            Defendant.              :
_____            :

**KUGLER**, United States District Judge:

      This matter comes before the Court on the motion of Defendant Bath Saver, Inc. ("Bath

Saver" or "Defendant") for summary judgment on the Complaint of pro se Plaintiff and former

employee David Johnson ("Plaintiff").  The sole count of the Complaint alleges that Defendant

discriminated against Plaintiff because of his race, in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e-2.  For the reasons that follow, Defendant's motion will be

granted.

**BACKGROUND**

      Plaintiff, who is African-American, began his employment with Bath Saver, an installer

of bath tubs and tile surrounds, on March 31, 2003.  (Johnson Dep. 30:12-15.)  Plaintiff was

hired as the warehouse technician for Bath Saver's Berlin, New Jersey office, where he received

installation materials, distributed materials for installation, and maintained the warehouse.

(Johnson Dep. 31:9-21.)  Bath Saver employees who went out and installed the tubs and tile

1

surrounds were called installation technicians, or simply installers.  In order to become an installer, an individual first had to go through four weeks of training with another installer, in additional to completing two training installations (a small training installation and then a large training installation).  (McGee Dep. 6:21-7:7.)  Installers were paid by a piece rate system and appear to make more than warehouse technicians.  (Def.'s Ex. E; Johnson Dep. 175:10-18.)

In December 2004, Plaintiff asked Glen McGee, who is the Production Manager for the Berlin office of Bath Saver, about training to become an installer.  McGee told Plaintiff to begin the training process in January 2005 and told Plaintiff to attend some on-site installations to ensure that Plaintiff was really interested in becoming an installer.  Plaintiff told McGee that Plaintiff knew enough about the installer position to know that he wanted the job and was ready to begin training.  There is a dispute as to who had the obligation to ensure that Plaintiff went on these installation observations.  Plaintiff's version, which the Court accepts as true on a motion for summary judgment, is that McGee was to schedule Plaintiff's training and observations.  (Johnson Dep. 65:16-21.)  Plaintiff testified that the office was very busy during the beginning of January, and he would not have left the warehouse without being scheduled because of the need for coverage.  (Johnson Dep. 65:19-66:3.)  In any event, McGee did not schedule any training observations for Plaintiff and two other people were hired to fill the open installer positions.  (Johnson Dep. 68:19-70:3.)

Plaintiff approached McGee in either late January or early February of 2005 to find out why the installer training process had not been scheduled for him and why other installers had been hired instead.  McGee explained that he thought that Plaintiff was no longer interested in the position because Plaintiff had not observed any installations.  (Johnson Dep. 69:19-70:5.)

2

Plaintiff alleges that other Bath Saver employees knew that Plaintiff was supposed to begin as an installer in January.  Kevin Koehl, the head trainer for the installers, told Plaintiff at some point in January 2005, "You do your job too well in the warehouse, and they're not going to let you out."  (Johnson Dep. 73:17-24.)  Two Bath Saver installers, Dave Padua and Mike Narciso, bet each other as to whether Plaintiff would become an installer in January 2005.  (Johnson Dep. 70:11-17; Padua Dep. 34:10-13; Narciso Dep. 18:21-19:8.)

In March 2005, Plaintiff approached McGee again to inquire about an open installer position.  McGee asked about Plaintiff's prior construction experience and indicated that he would have to ask Marty Gross, the owner of the company.  According to Plaintiff, Gross responded to McGee by saying that Plaintiff had started as a warehouse guy and was going to remain a warehouse guy.  (Johnson Dep. 79:10-81-1.)  Damon Widmer, the husband of the office's secretary, was hired for this installer position.  Plaintiff alleges that Widmer was not qualified for the position.

Between February and May 2005, Plaintiff's attitude towards his job became more negative.  (Johnson Dep. 78:3-5.)  On February 3, 2005, Plaintiff received a written warning for being forty minutes late to work and for reading personal materials on company time.  (Pl.'s Ex. D.)  On April 4, he received a second written warning for failing to report to work and failing to notify his supervisor that he would not be coming in.  (Pl.'s Ex. E.)  Plaintiff received a third written warning on April 21 for failing to prepare the materials necessary for the next day's installations.  (Pl.'s Ex. G.)  The last two warnings also noted that further violations of company procedures could result in Plaintiff's termination.  Plaintiff argues that these written warnings were not entirely warranted.

3

Beginning in May 2005, Plaintiff raised his dissatisfaction with Bath Saver's failure to consider him for an installer position.  Plaintiff brought up the issue at a branch meeting on May 27, 2005.  (Pl.'s Ex. H.)  Plaintiff raised the issue again at a meeting on June 2, 2005, with Jim Rossi, the general manager of Bath Saver.  (Def.'s Ex. I.)  At Plaintiff's request, Rossi indicated that he would look into whether the corporate office had made any decisions regarding allowing Plaintiff to train as an installer.  Plaintiff testified that he asked Rossi to investigate this because Plaintiff was unsure if only McGee was discriminating against him or if there was also discriminatory direction coming from the corporate management of the company.  (Johnson Dep. 102:16-103:8.)

The following week, Rossi, McGee, and Plaintiff had a meeting.  The office secretary was also present and took detailed notes, which the parties later signed.  (Def.'s Ex. I.)  At this meeting, Rossi said that he had looked into Plaintiff's concerns and concluded that a miscommunication regarding who had the responsibility of setting up the installation observations had occurred.  Rossi indicated that while Plaintiff had possessed "great attitude and job skill" in the past, beginning in January of 2005 there had been problems with Plaintiff's tardiness and job performance.  McGee told Plaintiff that he would be placed on probation for thirty days and at the end of the probationary period could begin the installer training.  Plaintiff protested the imposition of probation and asked why he needed to put his "integrity" on the line for thirty days before being allowed to begin the training.  Rossi told Plaintiff that the probation was Bath Saver's way of putting the problems from January through April behind them and giving Plaintiff the opportunity to succeed in the company.   (Def.'s Ex. I.)

Plaintiff testified that he had "mixed emotions" about this offer and the probation and that

4

he felt the offer was "insincere" and he "was being set up to fail."  (Johnson Dep. 115:4-10.)

Before the thirty-day period ended, Bath Saver had an immediate need for installers.  On June 20,

2005, McGee approached Plaintiff, waived the rest of the probationary period, and asked him to

begin training as an installer right away.  (Johnson Dep. 121:16-122:15.)  Plaintiff turned down

this offer and remained in his position as warehouse technician until he resigned, giving two

weeks notice on July 18, 2005.  (Def.'s Ex. J.)

Plaintiff filed his Complaint on July 27, 2006.  Bath Saver removed the case to this Court

on October 19, 2006.  At the close of discovery, Bath Saver filed the motion for summary

judgment now before the Court.[1]

## DISCUSSION

## 1.      Standard of Review

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue

of material fact exists only if "the evidence is such that a reasonable jury could find for the

nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In evaluating the

evidence presented by the parties, the Court "must view the facts in the light most favorable to

the nonmoving party and draw all inferences in that party's favor."  Andreoli v. Gates, 482 F.3d

641, 647 (3d Cir. 2007) (citation omitted).

---

[1]On September 20, 2007, Plaintiff filed a sur-reply to Bath Saver's motion.  New Jersey
Local Civil Rule 7.1(d)(6) provides that a party may only file a sur-reply with leave of the Court.
The Court did not give Plaintiff leave to file additional briefing and will not consider this
improper submission.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Celotex, 477 U.S. at 330.  The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.  Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

In an employment discrimination case where, as here, the plaintiff does not present direct evidence of discrimination, courts apply the three-step, burden-shifting standard outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under this burden-shifting framework, a plaintiff must first establish a prima facie case of discrimination.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (citing St. Mary's Center v. Hicks, 509 U.S. 502, 506 (1993)).  A rebuttable presumption of unlawful discrimination arises if plaintiff presents this prima facie case.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  Then, to rebut this presumption, the defendant employer must set forth admissible evidence of a legitimate, non-discriminatory reason for the employment decision at issue.  Id.; Reeves, 530 U.S. at 142.  The employer need not prove that the tendered reason actually

6

motivated the decision.  Texas Dep't of Cmty. Affairs, 450 U.S. at 253.  The burden of proving intent remains with the Plaintiff, who must show "that the illegitimate factor was a determinative factor in the adverse employment decision, that is, that but for the protected characteristic," the plaintiff would have received the job or promotion.  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994).  To survive summary judgment plaintiff must either: (i) present sufficient evidence to "cast substantial doubt upon" the employer's proffered reasons for not promoting her and reassigning her "by painting them as weak, implausible, contradictory, or incoherent", or (ii) present sufficient evidence from which a factfinder could "reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision."  Fuentes, 32 F.3d at 765.  This evidence could include facts a showing that the employer in the past had subjected him to unlawful discriminatory treatment, that the employer persons not of his protected class more favorably, or that the employer had discriminated against other members of his protected class or other protected categories of persons.  Id.

**2.      Claims**

The Court will evaluate Plaintiff's pro see filing under a less exacting standard than more formal papers drafted by lawyers and will give Plaintiff's allegations the benefit of all possible inferences.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Plaintiff  alleges that Bath Saver discriminated against him on three separate occasions:  first, by failing to train Plaintiff as an installer in January 2005; second, by hiring Damon Widmer instead of Plaintiff as an installer in March 2005; and third, by placing Plaintiff on a thirty-day probationary period in June 2005.

A. **January 2005**

Plaintiff claim that McGee's offer in December 2004 was never acted on and effectively withdrawn in 2005 when other installers were hired.  Plaintiff claims McGee overlooked and slighted him.

The Court construes the crux of Plaintiff's claims here as a challenge to Bath Saver's failure to promote him.  Though the position of warehouse technician is qualitatively different from that of installer (Def.'s Ex. E), because of the heightened responsibilities and heightened compensation available to an installer as compared to a warehouse technician the Court will treat Plaintiff's allegations as a failure to promote claim.  Proof of a formal application is not necessary in failure to promote and reclassify claims if Plaintiffs "made every reasonable attempt to convey [their] interest in the job."  EEOC v. Metal Services Co., 892 F.2d 341, 348 (3d Cir. 1990).

Generally, to satisfy the first prong of the McDonnell Douglas test in a failure to promote case, the plaintiff must establish a prima facie case of discrimination by showing (1) he is a member of a class protected by anti-discrimination laws; (2) he was qualified for the position or rank; (3) he was denied promotion, reappointment, or tenure; and (4) others with similar or lesser qualifications achieved that rank or position.  Bray v. Marriott Hotels, 110 F.3d 986, 989-90 (3d Cir. 1997).

Plaintiff has proven the first three elements of his prima facie case for this incident.  He is African-American, he was qualified enough for Bath Saver to consider making him an installer, and he was not scheduled for installer training.  However, Plaintiff has not established that the two individuals brought on as installers at that time possessed similar or lesser qualifications than

he did.  One installer transferred to the Berlin office from an office in Delaware.  This individual was already an installer, and so presumably did not have to go through any training and was therefore more qualified than Plaintiff.  (Johnson Dep. 69:1-2).  Plaintiff has not proved that the other individual hired, David Webster, had similar or lesser qualifications than Plaintiff.  According to Webster's job application forms, he has a vocational degree in building construction and significant experience in home construction.  (Def.'s Reply Br. Ex. B.)  However, because it is not clear exactly what the qualification requirements were for the position of installer, the Court will assume arguendo that Plaintiff has made his prima facie case.  See Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 647 (3d Cir. 1998).

  The burden then shifts to Bath Saver, which has articulated a legitimate non-discriminatory reason for not promoting Plaintiff in January 2005.  McGee testified that Plaintiff did not show any initiative in observing on-site installations.  (McGee Dep. 31:2-17.)  There is a disputed issue of fact as to who was going to schedule these observations.  Again, viewing the facts in the light most favorable to Plaintiff, McGee told Plaintiff that McGee would schedule observations and did not.  However, Plaintiff can point to no evidence that McGee's failure to live up to his commitment was a result of intentional discrimination as opposed to a simple mistake.  Fuentes, 32 F.3d at 765 ("the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent").

  Once Bath Saver has proffered Plaintiff's failure to take the initiative and view installations and the reason for not promoting him, it "need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff."  Fuentes, 32 F.3d at 763.

9

Plaintiff testified that he made an "assumption of discrimination, because of the fact that there's not a lot of minorities in the company." (Johnson Dep. 94:1-6.) An "assumption of discrimination" is not evidence of discriminatory intent, and there is no evidence about the racial composition of the Bath Saver workforce. See Taylor v. Cherry Hill Bd. of Educ., 85 F. App'x 836, 839 (3d Cir. 2004) ("In the context of discrimination claims, we have explained that conclusory allegations of discrimination, in the absence of particulars, are insufficient to defeat summary judgment.").

Plaintiff also alleges that other incidents at Bath Saver are illustrative of a culture of discrimination. He alleges that a racist remarks were directed at a Hispanic installer, Dave Padua, and that Padua did not receive the same quality of assignments as non-minority installers. He also alleges that installer trainees who were incompetent but were white were permitted to train beyond the four-week period without adverse employment action. Additionally, he alleges that Bath Saver employees commonly made joking remarks or racist slurs when they were scheduled to install products in predominately African-American or Hispanic neighborhoods. Taking these allegations as true, the Court finds that they do not show that Bath Saver's reason for not promoting Plaintiff was pretextual. The evidence shows that the employee who made the racist remark was not in a position of authority and was disciplined. (Padua Dep. 35:19-36:23.) The remaining disputed allegations do not evidence intentional discrimination towards Plaintiff, because "there still must be evidence from which to infer discrimination apart from the fact that some members of one group are sometimes treated better and sometimes treated worse than members of another group." Simpson, 142 F.3d at 646. Additionally, these comments were not made by McGee or anyone with authority over Plaintiff. Ezold v. Wolf, Block, Schorr, and

Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

Plaintiff can point to no evidence from which a factfinder could reasonably infer that Bath Saver's proffered reason for not training him as an installer in January 2005 was pretextual. He cannot carry his burden to prove that Bath Saver intentionally discriminated against him, and Defendant is granted summary judgment Plaintiff's claim based on the January 2005 events.

**B.      March 2005**

Plaintiff additionally claims that he was discriminated against when he was overlooked in March 2005 and Damon Widmer was hired to train as an installer instead. Plaintiff again has a problem with the final element of his prima facie burden because he cannot show that Widmer possesses similar or lesser qualifications. Widmer has prior experience in graphic design, tile work, and stone carving and installation. (Def.'s Reply Br. Ex. C.)

Even assuming as above that Plaintiff has met his prima facie burden, as with the January 2005 incident, Bath Saver has articulated a legitimate non-discriminatory reason for hiring Widmer instead of promoting Plaintiff. In addition to the lack of initiative problem from January, there was concern about Plaintiff's lack of construction experience. (McGee Dep. 21:14-22:12.) Plaintiff can point to no evidence that these reason were pretextual.

Plaintiff also argues that Widmer was hired because Widmer's wife had recently been hired as a secretary for the Berlin office. (Johnson Dep. 92:24-93:5; Pl.'s Ex. L.) However, even if that relationship motivated the decision to hire Widmer, that is not evidence that racially-discriminatory intent motivated the decision to not promote Plaintiff. See Dungee v. Northeast

Foods, Inc., 940 F. Supp 682, 687-78 (D.N.J. 1996) ("Hiring an applicant because he was referred by a supervisor or even because he was acquainted with someone in the interviewer's family does not constitute legal discrimination.")  Plaintiff also argues that Bath Saver had a policy of promoting from within but that this policy was not applied to him because of his race (Pl.'s Opp'n at 10, Pl.'s Ex. L).  There is evidence that some employees at Bath Saver were promoted from within the company (McGee De. 36:9-23); however, there is no evidence that a policy favoring promoting from within existed or that it was unevenly applied.

　　　As with the January 2005 allegations, Plaintiff can point to no evidence of intentional discrimination by Bath Saver.  Defendant is granted summary judgment on Plaintiff's claim based on the March 2005 events.

### C.   June 2005 Probation

　　　Plaintiff's final allegation of discrimination challenges the requirement imposed in June 2005 that he pass a thirty-day probationary period before beginning training as an installer. Assuming arguendo that Plaintiff can satisfy his prima facie burden, the three written warnings Plaintiff received between February 2005 and April 2005 provided Bath Saver a legitimate non-discriminatory reason for its actions.  Though Plaintiff submits that the conduct giving rise to the warnings occurred because he had been slighted by the company, he does not deny he had "a couple infractions."  (Pl.'s Opp'n at 9.)   Plaintiff was not similarly situated to other potential trainees in June because his employment record reflected the written warnings he had received since February.  These spots on his employment record are a legitimate non-discriminatory reason for imposing the probationary period.  See Chapman v. Am. Inst. of Certified Pub. Accountants, 233 F. App'x 141, 143 (3d Cir. 2007).

Morever, after two weeks, Bath Saver waived the remainder of the probation and asked Plaintiff to immediately begin training as an installer.  When he was offered the promotion he had sought, Plaintiff turned it down.  Though a delay in promotion rooted in discrimination may be an adverse employment action if it is not accompanied by retroactive pay, in those cases the employee has actually accepted the promotion.  See Coefield v. GPU, 125 F. App'x 445, 449 (3d Cir. 2005); McGinnis v. U.S. Air Force, 266 F. Supp. 2d 748, 771 (S.D. Ohio 2003) (also noting that delay will not be adverse employment action where not accompanied by initial adverse consequences, such as loss of opportunity for advancement).  Plaintiff did not accept this position when it was offered and has shown no real employment consequences as a result of the delay. Defendant will be granted summary judgment on Plaintiff's claim based on the June 2005 events as well.  **CONCLUSION**

Plaintiff can point to no evidence to satisfy his burden of proving that Bath Saver engaged in unlawful discrimination.  Bath Saver's motion for summary judgment is granted.


Dated:   3-6-2008                                      /s/ Robert B. Kugler
                                                      ROBERT B. KUGLER
                                                      United States District Judge